UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE MCKESSON GOVERNMENTAL ENTITIES AVERAGE WHOLESALE PRICE LITIGATION | Master File No.: 1:08-CV-10843-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>*Connecticut*, No. 1:08-CV-10900-PBS | |

**McKESSON'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE
AFFIRMATIVE DEFENSES**

# **TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION | 1 |
| ARGUMENT | 2 |
| I. PLAINTIFFS' MOTION TO STRIKE SHOULD BE DENIED AS UNTIMELY AND AS AN IMPROPER ATTEMPT TO ADJUDICATE MCKESSON'S DEFENSES PIECEMEAL | 3 |
| II. MCKESSON'S STATUTE OF LIMITATIONS DEFENSE TO PLAINTIFFS' RICO CLAIMS IS WELL GROUNDED IN LAW AND FACT | 5 |
|     A. Plaintiffs Misstate the Test for Triggering RICO's Four-Year Limitations Period. | 5 |
|     B. Class Members Knew Or Should Have Known Of Their Alleged Injury More Than Four Years Before These Actions Were Filed | 7 |
| III. PLAINTIFFS' CHALLENGE TO MCKESSON'S MITIGATION DEFENSE IS MERITLESS | 9 |
| IV. MCKESSON'S DEFENSES IN THE CONNECTICUT CASE LIKEWISE PRESENT DISPUTED ISSUES | 11 |
| V. THE MISCELLANEOUS ISSUES RAISED IN PLAINTIFFS' BRIEF ARE NOT THE PROPER SUBJECT OF A MOTION TO STRIKE | 12 |
| CONCLUSION | 14 |

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
  483 U.S. 143 (1987)..................................................................................................5

*Bieter Co. v. Blomquist*,
  987 F.2d 1319 (8th Cir. 1993) ....................................................................................9

*Bishop v. Toys "R" Us-NY, LLC*,
  2009 U.S. Dist. LEXIS 17377 (S.D.N.Y. Feb. 19, 2009)............................................3

*Computer Sys. of Am., Inc. v. Data Gen. Corp.*,
  921 F.2d 386 (1st Cir. 1990)......................................................................................10

*Elliot v. City of New York*,
  2008 U.S. Dist. LEXIS 67986 (S.D.N.Y. Sept. 4, 2008).............................................9

*FTC v. Neovi, Inc.*,
  598 F. Supp. 2d 1104 (S.D. Cal. 2008)......................................................................12

*Hernandez v. Balakian*,
  2007 U.S. Dist. LEXIS 43680 (E.D. Cal. June 1, 2007)..............................................9

*Lamoureux v. AnazaoHealth Corp.*,
  250 F.R.D. 100 (D. Conn. 2008)................................................................................12

*Lares Group, II v. Tobin*,
  221 F.3d 41 (1st Cir. 2000).................................................................................5, 6, 7

*LNC Invs., Inc. v. First Fid. Bank, N.A.*,
  1997 U.S. Dist. LEXIS 12858 (S.D.N.Y. Aug. 27, 1997).........................................3

*Maggio v. Gerard Freezer & Ice Co.*,
  824 F.2d 123 (1st Cir. 1987)........................................................................................7

*Mathews v. Kidder, Peabody & Co.*,
  260 F.3d 239 (3d Cir. 2001).........................................................................................7

*Monex Int'l Ltd. v. Commodity Futures Trading Comm'n*,
  83 F.3d 1130 (9th Cir. 1995) ....................................................................................10

*Morgan, Olmstead, Kennedy & Gardner, Inc. v. Schipa*,
  585 F. Supp. 245 (S.D.N.Y. 1984)............................................................................11

*Murry v. W. Am. Mortgage Co.*,
   604 P.2d 651 (Ariz. Ct. App. 1979) ............................................................................4

*New England Carpenters v. First Databank, Inc.*,
   248 F.R.D. 363 (D. Mass. 2008) ................................................................................11

*Omega Eng'g v. Eastman Kodak Co.*,
   908 F. Supp. 1084 (D. Conn. 1995) ..........................................................................12

*Rotella v. Wood*,
   528 U.S. 549 (2000) ............................................................................................5, 6, 7

*Salcer v. Envicon Equities Corp.*,
   744 F.2d 935 (2d Cir. 1984) .................................................................................2, 13

*Security Abstract of Title Co. v. Longacre*,
   56 Neb. 469 (1898) ....................................................................................................11

*SEIU Health & Welfare Fund v. Philip Morris Inc.*,
   249 F.3d 1068 (D.C. Cir. 2001) ................................................................................13

*United States SEC v. Nothern*,
   400 F. Supp. 2d 362 (D. Mass. 2005) ............................................................2, 3, 12

*United States v. Castellano*,
   349 F.3d 483 (7th Cir. 2003) ....................................................................................13

*Villalobos v. N.C. Growers Ass'n*,
   2000 U.S. Dist. LEXIS 22449 (D.P.R. Jan. 10, 2000) ...............................................3

*Walker v. Transamerica Title Ins. Co.*,
   828 P.2d 621 (Wash. Ct. App. 1992) ........................................................................11

**STATUTES**

Ala. Code § 8-19-14 ..............................................................................................................4

Alaska Stat. § 45.50.531(f) ...................................................................................................4

**OTHER AUTHORITIES**

5C Wright & Miller,
   Federal Practice and Procedure, Civil 3d § 1380 (2004) ........................................2
   Federal Practice and Procedure, Civil 3d § 1381 (2004) .........................................2

**INTRODUCTION**

Three months after being served with McKesson's Answers in these consolidated cases, the *Douglas County* plaintiffs, the San Francisco Health Plan, and Connecticut move under Rule 12(f) to strike McKesson's statute of limitations and mitigation defenses. Their motion to strike was filed at the same time as their motion for class certification and was incorporated by reference therein. Accordingly, McKesson proposed that the issues in the motion to strike be briefed and heard on the class certification schedule. Plaintiffs refused, insisting that their motion to strike be decided now.

Plaintiffs' motion to strike raises a host of disputed issues that require its denial. First of all, the motion is untimely. Motions to strike must be brought within 20 days of the pleading they address. Plaintiffs missed that deadline by months.

Even if the Court ignores plaintiffs' unexcused delay, their motion is not well grounded in either law or fact. Plaintiffs incorrectly assert that McKesson's statute of limitations and mitigation defenses are legally defective. Controlling authority, including recent decisions by the Supreme Court and First Circuit, is directly to the contrary.

Plaintiffs also fail to acknowledge substantial factual support for McKesson's statute of limitations and mitigation defenses. In particular, McKesson has uncovered evidence that many class members, including some of the named plaintiffs, were told of FDB's markup increases five or six years before these actions were filed. Indeed, McKesson has found letters written to state Medicaid agencies as early as the ***fall of 2002,*** stating that ***FDB had raised its markups unilaterally*** and that, contrary to FDB's representations, ***these increases were not based on a wholesaler survey***.

The balance of plaintiffs' motion asks the Court (1) to rewrite its prior orders to block further discovery into McKesson's statute of limitations and mitigation defenses, and (2) to render an advisory opinion regarding the proper measure of damages under the assumption that

1

McKesson's defenses are not available.  Neither issue is properly before the Court on a motion to strike.

Discovery in these cases is far from complete.  Plaintiffs have not finished their document productions or submitted to depositions.  Third party discovery is ongoing.  The Court will have the opportunity to consider McKesson's statute of limitations and mitigation defenses at class certification, summary judgment, and, if necessary, trial, with the benefit of the record developed through this process.  McKesson's right to develop that record should not be cut short simply because plaintiffs would prefer not to have to deal with these issues.  Plaintiffs' motion to strike should be denied.

## ARGUMENT

Motions to strike affirmative defenses are strongly disfavored.  "[M]otions pursuant to Fed. R. Civ. P. 12(f) are viewed by federal courts with healthy skepticism.  Motions to strike are often considered to be dilatory, irksome or simply a device to accomplish unessential cosmetic surgery to the pleadings."  *United States SEC v. Nothern*, 400 F. Supp. 2d 362, 367 (D. Mass. 2005).  A leading commentator laments that "[d]espite [the] well-established limitations on the procedure, Rule 12(f) motions challenging valid defenses unfortunately are common and continue unnecessarily to occupy the attention of the courts."  5C Wright & Miller, Federal Practice and Procedure, Civil 3d § 1381 (2004).

Accordingly, the moving party bears a heavy burden in persuading the court that it should summarily deny a party's defenses without the benefit of discovery, among other reasons because of "the risk of offering an advisory opinion on an abstract and hypothetical set of facts." *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds by* 478 U.S. 1015 (1986).  Thus, "the federal courts have established a standard under which it must be shown that the [defenses] being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party."  5C Wright & Miller § 1380.  Motions to

strike defenses "should be granted only when it is beyond cavil that the defendant [] could not prevail on them."  *Nothern*, 400 F. Supp. 2d at 364 (quoting *Honeywell Consumer Prods., Inc. v. Windmere Corp.*, 993 F. Supp. 22, 24 (D. Mass. 1998)).  "Where there are disputed issues of fact or substantial issues of law, a motion to strike should not be used to test the merits of the defense; close or new questions of law and disputed factual issues should await a full hearing on the merits."  *Villalobos v. N.C. Growers Ass'n*, 2000 U.S. Dist. LEXIS 22449 at *5-6 (D.P.R. Jan. 10, 2000).

> **I.   PLAINTIFFS' MOTION TO STRIKE SHOULD BE DENIED AS UNTIMELY AND AS AN IMPROPER ATTEMPT TO ADJUDICATE MCKESSON'S DEFENSES PIECEMEAL.**

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either (1) on its own initiative at any time, or (2) on motion from a party filed "within 20 days after being served with the pleading."  Fed. R. Civ. P.  12(f).  McKesson's Answer in these cases was filed on April 2, 2009.  Plaintiffs' motion to strike was not filed until three months later.  Plaintiffs here offer no explanation for their delay.[1]  Plaintiffs' tardiness in and of itself is sufficient reason to deny their motion.  *See Bishop v. Toys "R" Us-NY, LLC*, 2009 U.S. Dist. LEXIS 17377 (S.D.N.Y. Feb. 19, 2009); *LNC Invs., Inc. v. First Fid. Bank, N.A.*, 1997 U.S. Dist. LEXIS 12858 (S.D.N.Y. Aug. 27, 1997).

Plaintiffs' motion should be denied for the additional reason that it is limited to plaintiffs' RICO and Connecticut Unfair Trade Practices Act ("CUTPA")claims, and fails to address the sufficiency of McKesson's statute of limitations and mitigation defenses as against plaintiffs' other legal claims and theories.  Motions to strike are not properly used to perform "unessential cosmetic surgery to the pleadings."  *Nothern*, 400 F. Supp. 2d at 367.  Thus, even if all of

---

[1] Plaintiffs filed a 14-page brief in the "All Actions" docket on July 1 [Docket No. 67], and nine days later filed another 8-page brief that relates only to the *Connecticut* case [Docket No. 37]. This Opposition responds to both papers.

3

plaintiffs' arguments could be taken at face value, which McKesson vigorously disputes, the motion must be denied because McKesson's defenses cannot be stricken piecemeal.

The *Douglas County* complaint includes causes of action under the Consumer Protection Acts of 33 states, the common law of tortious civil conspiracy of 50 states, and the common law of tortious interference with contract of 50 states. (*See Douglas County* SAC ¶¶ 294-336.) The *SFHP* complaint adds five more state-law causes of action, some overlapping with the *Douglas County* claims and some unique. (*See SFHP* SAC ¶¶ 296-319.) Plaintiffs' briefs do not address the sufficiency of McKesson's defenses as against any of these claims. But, of course, many of those state-law causes of action have much shorter statutes of limitation than RICO, and many of them have undoubtedly run, making McKesson's statute of limitations defense an important part of this action.[2] And with respect to McKesson's mitigation defense, plaintiffs do not even attempt to argue that the common law applicable to *all* 133 of their state-law causes of action relieves them of their duty to mitigate their damages. Because McKesson's defenses are fully applicable to these other causes of action, there is no economy of discovery to be gained from the motion. Accordingly, the motion's piecemeal assault on the pleadings is a second sufficient reason to deny it.[3]

Even if the Court were inclined to parse the pleadings and consider the applicability of McKesson's statute of limitations and mitigation defenses to some claims and legal theories but not others, plaintiffs' motion should be denied for the reasons we now discuss.

---

[2] Sufficient examples can be found just among those states that begin with the letter "A." *See, e.g.*, Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-14 (barring actions brought more than one year after discovery); Alaska Unfair Trade Practices and Consumer Protection, Alaska Stat. § 45.50.531(f) (barring actions brought more than two years after discovery); *Murry v. W. Am. Mortgage Co.*, 604 P.2d 651, 654 (Ariz. Ct. App. 1979) (barring actions brought more than one year after discovery).

[3] As a practical matter of course, the determination of which defenses are applicable to which causes of action is not done by "striking" the defenses. Rather, such parsing is typically achieved by way of jury instructions.

## II. MCKESSON'S STATUTE OF LIMITATIONS DEFENSE TO PLAINTIFFS' RICO CLAIMS IS WELL GROUNDED IN LAW AND FACT.

### A. Plaintiffs Misstate the Test for Triggering RICO's Four-Year Limitations Period.

Civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). The limitations period begins to run at "the time a plaintiff knew or should have known of his injury." *Lares Group, II v. Tobin*, 221 F.3d 41 (1st Cir. 2000) (quoting *Rodriguez v. Banco Central*, 917 F.2d 664, 665 (1st Cir. 1990)). The *Connecticut*, *SFHP*, and *Douglas County* complaints were filed May 20, May 28, and August 7, 2008, respectively. Thus, plaintiffs' RICO claims are barred if they knew or should have known about their alleged injury on or before those dates in 2004.

Plaintiffs contend that McKesson's statute of limitations defense is inapplicable because "for RICO fraud claims, the statute of limitations is not triggered until the plaintiff has actual or constructive knowledge of the defendant's fraud." According to their brief, no plaintiff had knowledge of the "fraud" until publication of an article in the *Wall Street Journal* in October 2006. (Pl. Mem. in Support of Mot. to Strike at 6-7 ("Pl. Mem.").)[4] Plaintiffs' motion rests on an egregious misstatement of when the statute of limitations begins to run for purposes of civil RICO. Controlling authority holds that ***knowledge of the injury***, not knowledge of the fraud, triggers the statute of limitations on RICO claims. *Rotella v. Wood*, 528 U.S. 549, 554 (2000); *Lares*, 221 F.3d at 43.

In *Rotella,* the Supreme Court surveyed the "three distinct approaches" to the RICO statute of limitations that had been adopted by the courts of appeal. The Court rejected the "injury and pattern" and "last predicate act" rules adopted in some circuits, and held instead that

---

[4] Oddly, this contention is contrary to plaintiffs' own pleadings, which indicate that they learned of the fraud allegations in June 2005. *See Connecticut* FAC ¶ 245 (alleging that "Plaintiff had no knowledge of the combination and conspiracy alleged herein . . . prior to the filing of [the *New England Carpenters*] complaint"); *SFHP* SAC ¶ 239 (same).

the limitations period begins to run upon either occurrence of the injury or discovery of the injury. 528 U.S. at 554 n.2 (declining to choose between those two options because that issue was not presented by the parties).

In explaining its reasoning, the Court noted that even "[i]n the circumstance of medical malpractice, where the cry for a [cause-of-action] discovery rule is loudest, we have been emphatic that the justification for a discovery rule does not extend beyond [discovery of] the injury." *Id.* at 555. The Court noted that in such cases "the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain," but even there "[a] person suffering from inadequate treatment is thus responsible for determining within the limitations period then running whether the inadequacy was malpractice." *Id.* at 556. Comparing that context to RICO, the Court concluded:

> We see no good reason for accepting a lesser degree of responsibility on the part of a RICO plaintiff . . . . A RICO plaintiff's ability to investigate the cause of his injuries is no more impaired by his ignorance of the underlying RICO pattern than a malpractice plaintiff is thwarted by ignorance of the details of treatment decisions or of prevailing standards of medical practice.

*Id.* at 556-57.

As explained in *Lares,* the First Circuit has long applied the injury discovery rule as the Supreme Court described it in *Rotella*:

> [W]e note that in *Rotella* the Supreme Court indicated that "in applying a discovery accrual rule, . . . discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." While we recognize that in *Rotella* the Supreme Court did not affirmatively adopt the injury discovery rule, we nonetheless believe that this passage is instructive and accurately reflects the law of this Circuit.

221 F.3d at 44.

Plaintiffs nonetheless assert that the "limitations period does not begin to run until the cause of action is complete." (Pl. Mem. at 6-7.) But, of course, a plaintiff's knowledge of fraud allegations is not an element that completes any cause of action, let alone RICO. In fact, both

6

*Rotella* and *Lares* explicitly recognized that a RICO cause of action *is complete at the time of the injury*. *Rotella*, 528 U.S. at 558 n.4; *Lares*, 221 F.3d at 45.[5]

Finally, plaintiffs suggest that a different accrual rule should apply because their case involves fraud, claiming that "[i]t is well established that the doctrine of fraudulent concealment operates to toll the statute of limitations." (Pl. Mem. at 5.)  But that notion, too, was rejected by *Rotella*. 528 U.S. at 557 ("we have already found the connection between civil RICO and fraud to be an insufficient ground for recognizing a limitations period beyond four years").[6]

### B. Class Members Knew Or Should Have Known Of Their Alleged Injury More Than Four Years Before These Actions Were Filed.

Although discovery remains ongoing, the evidence McKesson has found to date shows that both the RICO and state-law claims of many class members (and probably most Medicaid agencies) are barred by the statutes of limitations.  This evidence shows that class members learned of the 5% spread increases, and thus their injury, more than four years before these actions were filed.

On October 31, 2002, drug manufacturer Genzyme wrote a letter to the Wisconsin Medicaid agency, stating that FDB had "unilaterally increased" the AWP on three of its drugs.

---

[5] *Rotella* reserved the question of whether there could be an exception to the injury accrual rule where the second RICO predicate act did not occur until long after the injury, in which case the statute of limitation might not accrue until that second act "completed the elements of [the] cause of action." 528 U.S. at 558 n.4.  That hypothetical is irrelevant to these cases, because plaintiffs allege that the predicate acts preceded or were simultaneous with the markup increases that caused their injuries.

[6] Even if the doctrine of fraudulent concealment survives *Rotella*, its potential application to McKesson's statute of limitations defense is precisely the sort of fact-specific inquiry that cannot be resolved on a motion to strike.  *See, e.g., Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001) (holding that once a defendant proves that the plaintiffs knew of their injury, "the burden shifts to the plaintiffs to show that they exercised reasonable due diligence and yet were unable to discover their injuries.  This inquiry is both subjective and objective."); *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 129 (1st Cir. 1987) (holding that the limitations period could not be tolled for a plaintiff who "did not even bother to question any of the relevant parties concerning these issues").

Genzyme's letter expressly disputed FDB's representation that its prices were based on wholesaler surveys, describing how Genzyme had contacted its two main wholesalers and learned that they had no knowledge of the markup increases and had not even been contacted by FDB. Genzyme then specifically told the Medicaid agency that it was being injured: "***we are concerned that reliance on First DataBank AWP information for payment purposes may lead public and private payors to overpay for Genzyme products***." Finally, Genzyme told the agency how it could avoid the impact of the price increases: "We suggest you consider using information sources other than First Databank when calculating reimbursement . . . . Our most recent review of Red Book data indicates that the AWPs reported for Genzyme products [have] not changed." (Letter from Christi van Heek to Roma Rowlands (Oct. 31, 2002), emphasis added (attached hereto as Ex. 1).)

Two weeks after receiving the Genzyme letter, Wisconsin Medicaid received a similar letter from the manufacturer Baxter. In that letter, Baxter likewise complains of the 25% markup applied by FDB, and describes how FDB "has refused to correct its new reporting practices" even after "communications to several levels of First Databank management." Like Genzyme, Baxter told Wisconsin how it could avoid the injury: "We recommend that you consult alternative reporting systems such as Redbook." (Letter from Michael Bradly to Roma Rowlands (Nov. 14, 2002) (attached hereto as Ex. 2).)

In December 2002, First Health Services Corporation ("FHSC")[7] prepared a report for the State of Pennsylvania concerning "an increased divergence between Red Book and Blue Book." In doing so, FHSC had conversations with FDB in which it learned that FDB was raising markups to 25%, while Red Book maintained them at 20%. (*See* Email from Debra Heller to "tbrown@state.pa.us" (Dec. 9, 2002) (attached hereto as Ex. 3).) The analysis FHSC prepared

---

[7] FHSC is "one of the nation's leading providers of integrated clinical management services for public sector healthcare clients," and "provide[s] pharmacy management services to Medicaid and state pharmaceutical assistance programs in 21 states and the District of Columbia." *See* https://www.fhsc.com/services/pharmacy.pdf.

8

for Pennsylvania concluded: "For the PACE/PACENET mix of drugs included in this analysis, Blue Book's prices are higher than Red Book on average. A change to Blue Book could result in increased expenditures on the order of $5.4 million per year." (*Id.* at 2.) Thus, not only did FHSC and Pennsylvania know of FDB's 5% increases, FHSC developed a formula to precisely quantify the resulting injury.[8]

While discovery remains ongoing, there is no reason to believe that these disclosures were limited to Wisconsin and Pennsylvania. A motion to strike is not a vehicle to resolve disputed questions of fact or law. *Elliot v. City of New York*, 2008 U.S. Dist. LEXIS 67986 at *53 (S.D.N.Y. Sept. 4, 2008). Plaintiffs' motion asks the Court to do both, in disregard of controlling legal authority and substantial evidence. Plaintiffs' motion to strike McKesson's statute of limitations defense should be denied.

### III. PLAINTIFFS' CHALLENGE TO MCKESSON'S MITIGATION DEFENSE IS MERITLESS.

As with McKesson's statute of limitations defense, both the facts and the law provide strong support for McKesson's mitigation defense. *See Bieter Co. v. Blomquist*, 987 F.2d 1319, 1329 (8th Cir. 1993) (recognizing that RICO plaintiffs have a duty to mitigate damages); *Hernandez v. Balakian*, 2007 U.S. Dist. LEXIS 43680 at *19-26 (E.D. Cal. June 1, 2007) (denying the RICO plaintiff's motion to strike affirmative defense of mitigation because "[w]hether the [mitigation defense] is valid will depend on the development of facts through discovery, summary judgment and/or trial.")

---

[8] The statute of limitations under RICO also runs against those plaintiffs who "should have known of [their] injur[ies]." *Lares*, 221 F.3d at 44. There is abundant evidence from which a trier of fact could conclude that some or all class members were on inquiry notice of their injuries more than four years before these actions were filed. For instance, named plaintiff Goldsboro, N.C. has acknowledged that it "did see a spike in drug prices in 2001." *See* P07241-42 (minutes of the Dec. 1, 2008 Goldsboro City Council meeting). Other potential class members received regular reports from PBMs that flagged the spike, or subscribed to FDB's publications and could have observed the increased spreads themselves.

Plaintiffs base their argument on the premise that an injured party has no duty to mitigate "where both parties could just as easily have prevented the loss." (Pl. Mem. at 7.) According to plaintiffs, the only action that would have triggered their duty to mitigate would have been a full confession by McKesson. (Pl. Mem. at 11.) Because McKesson continues to deny that it had any improper involvement in the spread increases, the argument goes, it has "allowed Plaintiffs' injuries to continue to this very day." (*Id.*) In the alternative, plaintiffs assert that their duty to mitigate was triggered by publication of the *Wall Street Journal* article in October 2006. (*Id.* at 12.)

Like their argument concerning the statute of limitations, plaintiffs' motion to strike McKesson's mitigation defense misstates the law and the holdings of the cases on which they rely. For example, in *Monex Int'l Ltd. v. Commodity Futures Trading Comm'n*, 83 F.3d 1130 (9th Cir. 1995), the plaintiff entered into two contracts for the purchase of silver bars. Several days later, the plaintiff rescinded the contracts, such that he no longer owned the silver. *Id.* at 1133-34. The market price of silver plummeted thereafter. The court held that the plaintiff had a duty to mitigate, but that his duty ended when he rescinded the contracts. *Id.* at 1135-36. That holding has nothing to do with the issues presented by plaintiffs' motion to strike.

Plaintiffs' suggestion that "the First Circuit applied this rule in *Computer Systems*" is also wrong. (Pl. Mem. at 8, citing *Computer Sys. of Am., Inc. v. Data Gen. Corp.*, 921 F.2d 386 (1st Cir. 1990).) In that case, a phone company counterclaimed against a company it had leased computers from, seeking damages for the expense it had incurred in storing the obsolete computers after the time that the lessor was contractually obligated to take them back. The lessor contended that the phone company was obligated to mitigate its storage-charge damages by throwing away the old computers. 921 F.2d at 392. The court rejected that argument, holding that because the proper ownership of the computers was still in dispute throughout the period, the phone company "was scarcely in a position" to just get rid of the computers any way it wanted. *Id.* *Computer Systems* does not stand for the proposition that the public payor plaintiffs had no duty to mitigate on the facts of these cases.

The other cases plaintiffs cite are no more on point. The fact that they have to reach to a 17 year old case from a Washington state appellate court, a 111 year old case from Nebraska, and a 25 year old case from the Southern District of New York to support their argument is telling. (Pl. Mem. at 8-10.)[9]

Finally, plaintiffs cite this Court's class certification opinions in *New England Carpenters* in support of their argument that McKesson's mitigation defense should be stricken. (Pl. Mem. at 9 ("Here, it is appropriate for the Court to strike or limit McKesson's defenses in light of the Court's previous rulings on these very same issues in *Carpenters*.").) But the Court did not strike McKesson's mitigation defense in *Carpenters*. Instead, it accepted McKesson's arguments that if members of the class learned of the spread increases and took measures to avoid them, their damages would be reduced or eliminated. In fact, the Court's acceptance of those arguments was the basis for ending the TPP damages period at December 2003. *See New England Carpenters v. First Databank, Inc.*, 248 F.R.D. 363, 367-72 (D. Mass. 2008).[10]

### IV.   MCKESSON'S DEFENSES IN THE *CONNECTICUT* CASE LIKEWISE PRESENT DISPUTED ISSUES.

As noted above, plaintiffs filed a separate brief contending that the statute of limitations and mitigation defenses should be stricken from McKesson's Answer in the *Connecticut* case

---

[9] The facts of these far-flung cases further demonstrate their irrelevance. *See Walker v. Transamerica Title Ins. Co.*, 828 P.2d 621 (Wash. Ct. App. 1992) (holding that the holder of a second mortgage whose interest was wiped out when the holder of the first mortgage foreclosed on the property, did not have to "mitigate" her damages by making payments on the first mortgage, because the defendant could equally have made those payments); *Security Abstract of Title Co. v. Longacre*, 56 Neb. 469 (1898) (same); *Morgan, Olmstead, Kennedy & Gardner, Inc. v. Schipa*, 585 F. Supp. 245 (S.D.N.Y. 1984) (rejecting a securities defendant's argument that the plaintiff was contributorily negligent by not discovering the fraud that he was committing upon it).

[10] Plaintiffs' alternative assertion that any duty to mitigate did not arise until after publication of the *Wall Street Journal* article in 2006 likewise acknowledges the applicability of McKesson's mitigation defense. The question of when that duty arose cannot be decided on a motion to strike.

11

because they do not apply to Connecticut's CUTPA causes of action. (Mem. in Support of Connecticut's Mot. to Strike Defenses to the State's CUTPA Claims [Docket No. 37] ("CT Mem.").) That motion should be denied as well.

First, the *Connecticut* motion is similarly late-filed, and similarly piecemeal in that it concerns only Connecticut's CUTPA claims. There is no purpose to be served by the Court performing "unessential cosmetic surgery" with respect to those claims, when, as explained above, these defenses are fully applicable to Connecticut's RICO causes of action. *Nothern*, 400 F. Supp. 2d at 367.

Second, even if plaintiffs were correct that Connecticut is not subject to the CUTPA statute of limitations, the extent of Connecticut's obligation to mitigate its damages, and the factual actions it took to do so, are the subject of numerous factual and legal disputes. While plaintiffs argue the merits of Connecticut's CUTPA claims (CT Mem. at 4-6), and include a discursion into "reasonable avoidability" under the federal FTC Act (*Id.* at 6-8),[11] they cite no authority holding that a CUTPA plaintiff does not have a duty to mitigate. Once again, the cases are to the contrary. *See, e.g., Lamoureux v. AnazaoHealth Corp.*, 250 F.R.D. 100, 103 (D. Conn. 2008) (denying plaintiffs' Rule 12(f) motion to strike the affirmative defense of failure to mitigate, where the complaint stated CUTPA and other causes of action); *Omega Eng'g v. Eastman Kodak Co.*, 908 F. Supp. 1084, 1100 (D. Conn. 1995) (considering plaintiff's duty to mitigate in a case involving a CUTPA cause of action.).

V. **THE MISCELLANEOUS ISSUES RAISED IN PLAINTIFFS' BRIEF ARE NOT THE PROPER SUBJECT OF A MOTION TO STRIKE.**

Plaintiffs' brief in the *All Actions* docket raises two additional issues, neither of which can be decided on a motion to strike or warrant the relief plaintiffs request.

---

[11] "Reasonable avoidability" under the FTC Act, however, has nothing to do with the mitigation of damages. Rather, "reasonable avoidability" (or, rather, the lack thereof) is an *element* that the FTC must prove to prevail on its cause of action under the Act. *See FTC v. Neovi, Inc.*, 598 F. Supp. 2d 1104, 1112 (S.D. Cal. 2008).

First, plaintiffs appear to seek an *in limine* ruling governing the method by which their alleged damages should be calculated. (Pl. Mem. at 12.) They argue that an indefinite list of "cost-savings devices" (including increased co-payments, "most" rebates, and unspecified "reduced benefits to plan beneficiaries") should not be taken into account in calculating damages. (*Id.* at 14) They contend that such savings come from a "collateral source" and are thus fully recoverable by the class members themselves, such that McKesson has no right to a damages offset for those mitigation measures. (*Id.* at 12-13.)

As with their other arguments, plaintiffs' "supporting" citations for their contention that the collateral source rule applies to the mitigation measures they took is off point. Plaintiffs assert that their "civil RICO claims . . . are subject to the collateral source rule," citing *United States v. Castellano*, 349 F.3d 483 (7th Cir. 2003), and *SEIU Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068 (D.C. Cir. 2001). (Pl. Mem. at 13.) But each case mentions "collateral source" only once and in completely irrelevant contexts. *Castellano* notes only that the appropriate "loss calculation" under the Sentencing Guidelines is not reduced by the amount the crime victim receives from a collateral source. 349 F.3d at 484. The reference in *SEIU Health & Welfare Fund* is even farther afield. There, the court held that several TPPs and the nations of Guatemala, Nicaragua, and Ukraine could not recover damages under RICO against tobacco companies because their injuries were too remote under the familiar *Holmes* causation analysis. 249 F.3d at 1069. The collateral source rule was mentioned only in connection with the *Holmes* factor involving double recovery, and it provides no support for plaintiffs' proposition here that they are entitled to recover damages that they did not suffer due to mitigation measures they successfully undertook. *Id.* at 1075. Even if there were additional, uncited legal support for the proposition plaintiffs urge, it would be improper to resolve that issue through a motion to strike. *See Salcer*, 744 F.2d at 939 ("Thus the [disputed] law on this point is confused and unsettled. . . . It was therefore error to strike the affirmative defenses.").

Similarly, there are a multitude of factual issues that must be resolved before the Court can determine the significance of the unspecified "cost-savings devices" that plaintiffs seek to

13

avoid.  Resolution of such issues will require consideration of the specific types of cost-savings strategies the class members employed, the class members' reasons for enacting those strategies, and the status of each class member's knowledge at the time it enacted them.  Such issues can only be dealt with after discovery has closed, and with the benefit of full briefing and expert reports.

Finally, plaintiffs appear to seek a ruling governing the proper scope of discovery.  (Pl. Mem. at 1 n.1, 4, 7; Mot. to Strike at 2.)  While it is not clear how exactly they want discovery to be limited, to the extent that they seek to curtail discovery into issues involving the design of their drug benefit programs or measures taken to control the costs of drug reimbursement, they have already litigated, and lost, those issues.  (*See* Order on McKesson Corporation's Motion to Compel Production of Documents (May 28, 2009) [Docket No. 52].)  Similarly, the Court has already ruled, over plaintiffs' objections, that McKesson is entitled to full discovery "regarding Public Payor entities, programs, knowledge, and damages."  (CMO No. 2, ¶ 3 (Mar. 11, 2009) [Docket No. 31]; *see also* Scheduling Hr'g Tr. (Feb. 12, 2009).)  Plaintiffs have advanced no sound reason for the Court to revisit those discovery rulings under the guise of this motion to strike.

## CONCLUSION

Because the challenged defenses have both legal and factual merit, and because plaintiffs' other requests are not the proper subject of a motion to strike, McKesson respectfully asks that plaintiffs' motion be denied.

McKesson Corporation
By its attorneys:

/s/ Lori A. Schechter
Melvin R. Goldman (*pro hac vice*)
James P. Bennett (*pro hac* vice)
Lori A. Schechter (*pro hac vice*)
Paul Flum (*pro hac vice)*
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
Email:  LSchechter@mofo.com
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Robert S. Frank, Jr.
R.J. Cinquegrana
Joseph H. Zwicker
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
Telephone:  (617) 248-5000
Facsimile:  (617) 502-4000

Dated:  July 24, 2009

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on July 24, 2009.

/s/ Lori A. Schechter
Lori A. Schechter